## HENRY T. IRISH v. JOHN T. WRIGHT, and others.

Where the master of a steamer, for the fraudulent purpose of aiding a debtor in removing his property into a foreign country beyond the reach of, a creditor, conceals from the latter the fact of his having entered into an arrangement with the debtor for its removal, and, with a full knowledge of the rights of the creditor, transports the property out of the United States, thereby preventing the creditor from levying an attachment and saving his debt, he will be liable to the creditor for the amount of the debt, where it does not exceed the value of the property so removed.

An attachment may be obtained though the debt be not due, provided the plaintiff make oath to the existence of the debt, and comply with the other requisites of the sixth section of the Stat. of 7 April, 1826. C. P. 240, 242, 243.

After property attached has been bonded, and the case is at issue on the merits, it is too late to object to the attachment as irregular, in consequence of the suit being for damages.

Civil process may be served on the the twenty-fifth of December. That day is not mentioned in art. 207 of the Code of Practice, among those on which no such process can be served.

Statements made by a juror of the reasons for his concurrence with the other jurors which are inconsistent with his oath as a juror, furnish no ground for a new trial.

APPEAL from the Parish Court of New Orleans, *Maurian*, J.

*Peyton*, *I. W. Smith* and *Grymes*, for the plaintiff.

*T. Slidell*, for the appellant.

I. The defendant being entitled to avail himself of all irregularities in the attachment suit against Alsbury, contends, that the attachment in that case was void by reason of the insufficiency of the affidavit. The plaintiff's agent swore only that defendant was justly and really indebted to plaintiff, and did not swear that the debt was *due*. There are two cases in which an attachment may issue, to wit; when the debt is due, and by the statute of April 7th, 1826, when it is not due. Where the debt is not due, a special statement of circumstances or grounds is required. Either the fact that the debt is due, or the special circumstances justifying the remedy before maturity, should appear on the face of the

affidavit. By article 242 of the Code of Practice, it is declared, that "the property of the debtor may be attached in the hands of third persons, by his creditor, in order to secure the payment of a debt, whatever may be its nature, whether the amount be liquidated or not, *provided the term of payment have arrived*, and the creditor, his agent or attorney in fact, who prays for the attachment, state expressly and positively the amount which he claims." And by article 243, it is provided, that "a creditor wishing to have the property of his debtor attached, must demand, in a petition presented to a competent judge, with a declaration made under oath, at the foot of said petition, stating the amount of the sum *due* to him, and that his debtor is either on the eve of leaving the State, that he has left it never again to return, that he resides out of the State, or that he conceals himself in order to avoid being cited." The word *due* is found both in the English and French texts.

The remedy by attachment is a severe one and it must be strictly construed; all the requisitions of the law must be complied with, or the proceedings are, *ab initio*, void. See the case of *Millaudon* v. *Foucher*, 8 La. 588.

II. The attachment against Wright was issued in a suit for damages for an alleged tort. Such a cause of action cannot support an attachment.

Under the legislation which preceded the Code of Practice, the remedy by attachment was expressly given for damages, *eo nomine*. The 2d section of the act of 1817, p. 26, contains the following provision; "That in all actions when the amount of the sum due is one hundred dollars or upwards, whether upon bond, bill of exchange, promissory note or liquidated account, and in every case where the amount of the debt, *damages* or demand is ascertained and specific, if the plaintiff in action, &c." But the Code of Practice, which abrogated all pre-existing laws on the subject of practice, (March 25th, 1828,) omits the word *damages* and substitutes the word *debt*. It adds also an expression and qualification, inconsistent with the idea of damages for a tort. Thus, in art. 242, we find it is only allowed, provided *the term* of payment have arrived, *pourvu qu'elles soient échues*. It is unreasonable to suppose that the Legislature meant by these expressions, to comprehend the case of damages for a tort or offence; and we may readily perceive the propriety of restricting this severe remedy to matters springing out of contracts, or obligations. See 6 Mart. N. S. 564. 2 Ibid. N. S. 323. In actions for damages for a wrong, the amount is necessarily uncertain.

III. The evidence shows, that the plaintiff's agent was not deceived by any statement or act of Wright—he so states himself. Consequently, though it should be considered that Wright at-

tempted to deceive him, yet if he was not actually deceived, there can be no claim for damages. The rule of law is well explained in 2 Starkie, p. 466. " To support an action on the case for deceit, the plaintiff must allege and prove a fraud to have been committed by the defendant, and that a damage has resulted from the fraud to the plaintiff. The fraud must consist in depriving the plaintiff, by deceitful means, of some benefit which the law entitled him to demand or expect." So at p. 471, " The *gist* of the action is, that the plaintiff was imposed upon by the fraud of the defendant. If therefore it appear, that the plaintiff *was aware of the falsity of the representation*, or made the contract, to use a common phrase, with his eyes open to the defect, he is remediless, *for he was not deceived.*"

IV. The damages must be conformable to the *facts of the case, and the injury actually sustained by the party.* The rule for damages in cases such as the present, where service of process is alleged to have been frustrated, may be reasonably deduced by analogy, from the decisions in cases of failure by sheriffs in the execution of process. Thus, a sheriff who fails to obey the legal instructions of the plaintiff in execution, is not bound for the whole amount of the judgment, but only for such damages as the plaintiff has actually suffered thereby. *Morgan's Admr.* v. *Voorhies*, 3 Mart. 479.

A sheriff's responsibility for permitting an escape on *mesne* process, is limited to the loss actually sustained by the plaintiff. *Clark* v. *Wright*, 5 Mart. N. S. 125.

Sheriffs are directly responsible, so far as their negligence or want of skill in the execution of their official duties causes a direct injury ; but not for losses remotely consequential, and such as grow out of a failure to gain. *Lambeth* v. *Mayer*, 6 La. 737. In an action for damages against officers for neglect, the redress in damages should always be proportioned to the injury really sustained. It would be unjust in such cases to place the plaintiff, at the expense of the defendant, in a better condition than he would have been in, if no such neglect had occurred. 1 Rob. 292. In an action against a sheriff for an escape and *false* return on *mesne* process, the plaintiff can recover no more than he might have done in the original action ; nor ought he to recover more than he has actually lost in consequence of the escape. *Potter* v. *Lansing*, 1 Johns. Rep. 215.

V. To justify a verdict for the total amount of plaintiff's debt, $13,333 33, the plaintiff should *have proved that the property of Alsbury was placed irrevocably beyond his pursuit ; this is not only not proven, but the reverse is proved.*

McCaughan, (plaintiff's agent,) proceeded in the steamer to

Texas, and on arriving there, instituted a suit for Irish against Alsbury, and had the *slaves sequestered.* See the record.

This suit *is still pending*, and no reason is given for its not being prosecuted, except McCaughan's assertion that there was no hope of getting justice in Texas. This idea is distinctly disproved by Irish's own counsel, who declares, that the courts of justice had set their faces against all species of fraud. It is asserted that slaves could not be sold under *fi. fa.* in Texas. The law restraining sales was repealed. See the record.

Is the plaintiff to have two payments? If he has been *hindered* in his pursuit, *is it to be taken for granted that all recourse is gone, and that the damage is the whole amount of the debt?* In the case of *Macarty* v. *Landreaux*, ante, 130, the court said; "He would be liable we apprehend, only for the loss really sustained. It is true, that his recourse may have been rendered *more difficult* and expensive, in consequence of the acts of the defendants. Such damages as he may sustain in consequence thereof, he will probably be entitled to recover; but these can be ascertained only after he shall have pursued his mortgage claim; he cannot as yet be said to have suffered any loss." The damages given by the jury are capricious and excessive.

VI. It will be observed that Irish, *though he has recovered a judgment against Wright for the whole face of his claim, is still the holder* of the liability of Alsbury, &c., *with his right, under the sequestration bond in Galveston, against the very property involved in this discussion.* In any event, the claim against Alsbury should be transferred to Wright, yet no provision is made for this in the verdict or judgment. *This is not a case in which subrogation would accrue by force of law;* and the judgment should be amended accordingly.

*Bradford*, on the same side.

BULLARD, J. This is an action against John T. Wright, master of the steam-ship New York, to recover of him damages for having knowingly aided and abetted one Alsbury, the plaintiff's debtor, in conveying a large number of slaves belonging to the latter, from the mouth of the Mississippi to Texas, with the design to evade and defeat legal process, whereby the plaintiff lost his debt amounting to $13,330. There was a verdict against Wright for that amount, and in favor of his co-defendants, part owners of the ship; and from a judgment rendered thereon, after an ineffectual effort to obtain a new trial, the defendant Wright apealed.

The facts are clearly made out. It is shown, that in pursuance

of a previous arrangement between an agent of Alsbury and Wright, which was carefully concealed by the latter, and with a full knowledge of the rights of the plaintiff, and against the earnest remonstrances of his agent, the slaves were taken by Wright and towed in a small vessel to Galveston, thus preventing the levying of an attachment which had issued from the Court of the First Judicial District, addressed to the sheriff of the parish of Plaquemines, which extends to the mouth of the Mississippi. It is not necessary to enter into any detail of the facts. It is sufficient to say, that, in our opinion, the jury was fully justified in concluding, that without the unjustifiable and fraudulent conduct of Wright, the plaintiff would have succeeded in levying his attachment and saving his debt.

The counsel for the appellant, asks the reversal of the judgment on various grounds, which we proceed to notice.

I. It is contended, that the attachment sued out by the present plaintiff against Alsbury, issued improvidently, because the affidavit did not set forth that the debt was really due by Alsbury, the Code of Practice requiring that the time of payment shall have arrived. Art. 242.

The affidavit annexed to the petition, upon which the attachment was issued, is positive and explicit, that the defendant Alsbury is indebted in the sum for which judgment is claimed. The affidavit appears to us sufficient under article 243 of the Code of Practice, which only requires a declaration on oath of the amount due, more especially as by an amendment of the code, by an act of the 7th April, 1836, an attachment may issue where the debt is not due, when the existence of the debt is shown by affidavit.

II. It is contended, that the attachment in the present case against Wright was irregular, inasmuch as it is a suit for damages. We are of opinion that this objection comes too late. The case was at issue on the merits, and the property attached bonded.

III. It is further contended, that the day on which the slaves were taken in tow by the defendant's steam-ship was Christmas, and not a judicial day ; that no process could have been legally served on that day ; and, consequently, that no such right was defeated. Article 207 of the Code of Practice, provides, that no

citation can issue, no demand be made, no proceeding had, nor suit instituted on Sundays, on the fourth of July, and the eighth of January, of any year.    The 25th of December is not mentioned among the days on which no civil process can be served.

The interest of Alsbury in the slaves thus conveyed away and landed in a foreign country, and the question whether that interest was equal in value to the debt due to the plaintiff, and, consequently, whether the plaintiff has actually sustained damage to the amount for which the verdict was rendered, were matters left to the jury, under the instruction of the court.    The evidence does not enable us to say that they erred in their finding.   If any recovery should hereafter be had in Texas, of which the record furnishes but slender hope, it may in equity be made available to the appellant ; but it is no argument, coming from him, that there is a possibility that the plaintiff may yet succeed in making his money out of the slaves thus carried away, by a fraudulent combination between the debtor and the appellant.    There is nothing in the case to satisfy us, that the verdict was either capricious or excessive.

The court, in our opinion, did not err in refusing a new trial.

IV.   The fourth ground upon which a new trial was asked, is, that the verdict was not rendered with the assent and concurrence of all the members of the jury, but by an abandonment and surrender of opinion on the part of one or more of the jurors, under a mistake and an erroneous impression as to the effect and operation of such verdict, which conduct was improper and illegal, on the part of such juror or jurors ; so that impartial justice has not been done in the case.

To support this ground, one of the counsel for the defendants made affidavit, that one of the jurors voluntarily stated to him, that he did not concur with the other jurors in the opinion, that the verdict was just and correct ; that, as he then declared to his fellow jurors, he consented to return such a verdict, because otherwise the jury would not have come to any agreement, and under the belief and idea that such verdict would not prejudice the defendant Wright, but that the case could and would be reserved for another court on appeal, and relief extended to Wright, with-

out prejudice to him, and that if he had not entertained such belief, he would not have assented to the verdict.

This is a very lame excuse for assenting to a verdict, and cannot be noticed by us as furnishing any serious ground for a new trial. The juror seems to have forgotten, that he had sworn to give his verdict according to law and evidence. He cannot now be listened to when he gives a reason for his concurrence in the verdict, which is inconsistent with his oath as a juror.

Another ground upon which the new trial was asked, was, that the court refused to charge the jury as requested by the defendants' counsel.

The charge which was given, and that which was refused, appear by a bill of exceptions in the record. The defendants asked the judge to charge the jury, that if the plaintiff's agent was not deceived by any representations of Wright, or if he obtained the desired information from other sources, so that he sustained no injury by the aforesaid misrepresentations, then the jury cannot give damages against Wright; but the judge charged, that if the jury found that Wright had combined with Alsbury, or his agent, in removing from the reach of the plaintiff the property upon which he was endeavoring to enforce his claim, and that, while Wright was thus combining, he deceived the plaintiff as to the fact that Alsbury's property and slaves were to be taken away by him, and, by his assurances that they were not, lulled the plaintiff into security, and thereby, prevented him from recurring sooner than he did to legal means for the enforcement of his rights, then the jury ought to find damages against Wright.

We are of opinion, that the court did not err in this charge to the jury. The view of the question pressed upon the judge by the defendants' counsel was much too narrow, and would have been calculated to mislead the jury.

Upon the whole, we conclude, that the case was fairly tried, and that nothing has been shown to justify our disturbing the verdict.

*Judgment affirmed.*