Todd Shipyards Corporation in 1960, under docket No. 379,730 of the Civil District Court for the Parish of Orleans, sued the corporation known as the Commercial Iron and Metal Company for $6461.73 as the balance due for scrap iron said plaintiff alleges it sold and delivered to defendant corporation under contract between September 30, 1957 and October 9, 1958. The defendant filed a general denial and reconvened for a large amount of damages. Following a trial on the merits a judgment was rendered in favor of Todd Shipyards Corporation as prayed for and the defendant's reconventional demand was dismissed. From that judgment Commercial Iron and Metal Company prosecuted a devolutive appeal to this court. We affirmed the judgment. See Todd Shipyards Corp. v. Commercial Iron and Metal Co.,142 So.2d 51.
In 1962, Todd Shipyards Corporation, under docket No. 407,203 of the Civil District Court for the Parish of Orleans, filed the instant suit against Nathan Lomm and Mrs. M. Y. Lomm, his wife, for the identical indebtedness which it had sought to recover in the above mentioned suit against Commercial Iron and Metal Company. Todd Shipyards Corporation alleged that said defendants were liable in solido unto it for the reason that the stockholders of Commercial Iron and Metal Company in 1944 adopted a resolution by unanimous consent to liquidate the corporation, and Mrs. Lomm was appointed liquidator; that despite the fact that the corporation was so placed in liquidation, Mrs. Lomm thereafter continued to operate it as a going concern under the name and style Commercial Iron and Metal Company; that Mrs. Lomm caused her husband, Nathan Lomm, to be named manager of Commercial Iron and Metal Company, in liquidation, and that both she and her husband received compensation for services rendered in connection with the liquidation of the corporation; that defendants further employed their son-in-law, one Gus Pailet, in an executive capacity; that Nathan Lomm and Gus Pailet purported to *Page 127 
negotiate the contract with plaintiff on behalf of Commercial Iron and Metal Company as officers thereof; that neither Lomm nor Pailet had lawful authority to enter into any contracts for Commercial Iron and Metal Company in 1957 or 1958, which was more than twelve years after the adoption of the resolution of dissolution; that while purporting to act for Commercial Iron and Metal Company, or for Commercial Iron and Metal Company, in liquidation, the defendants in truth and in fact were acting on their own behalf and for their own account; that in carrying on business under the name Commercial Iron and Metal Company long after the liquidator was appointed, defendants were in truth and in fact, under the law of Louisiana, acting as commercial partners, and as such are personally liable for plaintiff's claim; that in addition to acquiring the status of commercial partners, defendants, under the law, also assumed a fiduciary relationship as to plaintiff. Judgment was prayed for in the sum of $6461.73. Defendants filed a general denial coupled with the same reconventional demand, which Commercial Iron and Metal Company had previously asserted. During the pendency of the suit below, Mrs. Lomm was interdicted and Nathan Lomm was appointed curator of her estate, and in due course he, in that capacity, was made a party defendant. After a trial of the matter plaintiff recovered judgment against Nathan Lomm, individually, and as curator of the estate of the interdict, M. Y. Lomm, jointly and in solido in the amount prayed for, and defendant's reconventional demand was dismissed.
Nathan Lomm, individually, and as curator, appealed suspensively. Pending the appeal Mrs. Lomm died and her succession representative, if any, has not been made a party appellant. When the appeal was called for argument before us all parties were made to understand that the court could only entertain the appeal of Nathan Lomm individually. The law is plain that an appeal cannot be prosecuted in the name of a person deceased and any judgment, rendered by an appellate court for or against one deceased and not represented before it, is an absolute nullity. Edwards v. Whited, 29 La. Ann. 647; Louisiana Mut. Ins. Co. v. Costa, 32 La. Ann. 1; Hobbs v. Employers' Liability Assur. Corporation, La. App., 188 So. 191; Bernard v. Aetna Life Ins. Co., La. App., 145 So. 386. But the appeal of Nathan Lomm, an alleged solidary debtor, may be proceeded with. R.C.C. arts. 2095, 2096; Hillebrandt v. Home Indemnity Co., 177 La. 349, 148 So. 254.
Commercial Iron and Metal Company was incorporated under the laws of Louisiana in the year 1933 with its domicile in New Orleans. In July 1944, the three stockholders therein, by unanimous consent, adopted a resolution directing the dissolution of the corporation and its affairs out of court and appointing Mrs. M. Y. Lomm as liquidator. It does not appear that Mrs. Lomm had any previous connection with the corporation or carried on or conducted any of the corporate affairs. Her husband, Nathan Lomm, had been general manager from the inception of the corporation in 1933 and the record leaves no doubt that he directed and managed all of the corporate affairs and business both before and after the liquidator was appointed, and if anyone else took a hand in the corporate management it certainly is not shown by the record. Lomm admitted that after the appointment of the receiver his duties as general manager were to buy and sell metal. The corporate affairs were never completely wound up formally or otherwise. In 1957 and 1958 the contract for the purchase and sale of the scrap iron on which plaintiff's claim is based was executed on behalf of Commercial Iron and Metal Company with plaintiff despite the fact that at that time the corporation was then in liquidation and had been so for some thirteen years. Nothing in the contract even remotely refers to the corporation being in liquidation and from the face of the document it would appear to have been made solely and only for Commercial Iron and Metal Company as a going concern. *Page 128 
Of course, when the corporation was placed in liquidation its officers as such ceased to have authority to act for it. J. B. Beaird Corporation v. Johnson, La. App., 152 So. 789. However, the contract bound the liquidator as she and her general manager completely ratified the same by accepting the benefits thereunder.
After the resolution of dissolution Nathan Lomm went ahead buying and selling scrap metal as general manager as usual. When the concern had no funds he personally borrowed money and advanced it to Commercial Iron and Metal Company. He even stated that when the contract with plaintiff was entered into in 1957 or 1958 he "put up" a $2500 deposit. All this, coupled with the fact that Lomm, as general manager, and his wife, as liquidator, signed all checks on the banking account leads to the inevitable conclusion that Nathan Lomm himself was "the corporation". His testimony throughout the trial was unsatisfactory. For instance, among many other things worthy of note, he stated that he had no knowledge of what steps his wife took to wind up the affairs of the corporation in accordance with the requirements of law, and claimed he was totally ignorant of her activities as liquidator. He did not know how often she reported to the corporate office. He further stated that he did not know who the corporate officers were and did not know whether Pailet, his son-in-law, was a stockholder. When asked if he signed contracts for the purchase or sale of scrap metal after the institution of the liquidation he stated he "guessed" he did.
The authority and duties of a liquidator for a corporation are expressly set forth in R.S. 12:57 which deals with liquidation proceedings out of court. Under paragraph A(5) of the section the liquidator is granted the right:
 "To carry on temporarily the business of the corporation as a going concern, when it is necessary for the purpose of properly and economically liquidating the affairs of the corporation;"
It occurs to us that the contract entered into with plaintiff thirteen years after the commencement of the liquidation proceedings under the circumstances as we find them here was obviously undertaken with the expectation of a profit on the purchase and sale of the scrap material which was the subject of the contract, and can hardly qualify as a "temporary" carrying on of business looking to the termination of the corporate activity and existence.
What became of funds derived from contracts entered into by Nathan Lomm or from other sources does not appear in the record. No accounting was made by Lomm or his wife to anyone so far as the record reflects. Of a certainty Lomm received the scrap metal purchased from plaintiff under Pailet's contract, cut it by torch, and undoubtedly sold it. Plaintiff was not paid by Commercial Iron and Metal Company, Lomm, or Mrs. Lomm.
Lomm testified his wife was "supposed" to receive a salary of $1000 per year in payment of her service as liquidator and that his salary as general manager was sometimes $3600 per year and at other times $4,800 per year. For how many years these salaries were paid we cannot tell but we do know that in 1961 Mrs. Lomm received not $1000 but $2000. Lomm received $4800. According to Lomm the salaries were paid by the liquidator as long as there were funds available. The business ceased to operate in 1962. The combined aggregate amount of the salaries of Mr. and Mrs. Lomm accruing during the period between the resolution of dissolution and the cessation of business was more than $92,000.
The purpose of a dissolution or liquidation of a corporation, whether judicial or extra-judicial, is to wind up and settle the affairs of the corporation. In Re Dutch O'Neal Motors of Louisiana, Inc., La. App., 148 So.2d 468. It is the mandatory duty of the liquidator to wind up the *Page 129 
corporate affairs as promptly as may be. McCoy v. State Line Oil Gas Co., 180 La. 579, 157 So. 116.
R.S. 12:57, subd. C provides as follows:
 "In the performance of his duties each liquidator shall be bound to exercise that care and prudence in the custody, possession, control, and disposition of the property and moneys of the corporation coming into his hands, and in the proper accounting therefor and distribution thereof, as by law is imposed upon fiduciaries."
Under the jurisprudence of this state the liquidator is liable to creditors when he fails in or neglects his duty to expeditiously wind up the corporation's affairs and carries forward the business himself or misuses or misapplies the corporate assets. The instant case bears similarity with In Re Browne Jenkins Co., 106 La. 486, 31 So. 67, where, as here, a liquidator carried on the business as a going concern and sought later to take refuge behind the the corporate veil. The Supreme Court said:
 "* * * Instead of disposing of the property, collecting the outstanding debts due to it, and paying the creditors, Jacob M. Jenkins, the remaining liquidator, ignoring the fact that the 'corporation' had 'resolved' itself out of existence and gone into liquidation, and ignoring the orders of the court, in respect to that matter, carried forward the business precisely as it had always been, with the difference that Browne had disconnected himself from the concern, and Douglas Jenkins, though continuing his connection with it, had withdrawn his name, and matters thereafter were conducted in the name of 'Browne Jenkins Co., Limited, in Liquidation'. Purchases were made and debts created by Jenkins, liquidator, private sales effected by him, also contracts entered into and executed and moneys received, paid out to third parties, and drawn out by the two Jenkinses, without consultation with, or orders or permission from, anyone. During the continuance of this condition of affairs $16,000 or more went into the hands of the liquidator. * * * The business carried on under that name was in reality the business of Browne Jenkins, not of Browne Jenkins Company, Limited. The debts created in that name were debts due by them. It is no hardship and no injustice that J. M. Jenkins should be held personally to pay for those debts. * * *"
In Consolidated Companies v. LaRocca, 152 So.2d 841, decided by this court, plaintiff, a wholesale grocer, sought to recover an indebtedness allegedly owed by the sole proprietor of a grocery store. The evidence showed that after the date of the notice of dissolution of the corporation which had operated the store, defendant ran the business for himself and not as liquidator. We allowed a recovery.
Lomm's complicity with the liquidator in the latter's nonfeasance and malfeasance in office, plus the fact he conducted the business as his own, renders him liable to the injured creditors.
R.C.C. art. 2324 tersely recites:
 "He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
In Irish v. Wright, 8 Rob. 428, it was held that where one aided a debtor in removing his property into a foreign country beyond the reach of a creditor and conceals from the latter the fact of his having entered into an arrangement with the debtor for its removal, and, with a full knowledge of the rights of the creditor, transports the property out of the United States, thereby preventing the creditor from levying an attachment and saving his debt, he will be liable to the creditor for the amount of the debt. *Page 130 
In Smith v. Berwick, 12 Rob. 20, the court said:
 "* * * And he who * * * assists or encourages in the commission of it, [an unlawful act] is answerable, jointly with that person, for the damage caused by such act. Art. 2304 [now 2324]. The property of a debtor is the common pledge of his creditors, and whosoever unlawfully deprives them of the benefit of that pledge, or aids or assists in doing so, is liable to the creditor, who proves that he has been injured by it, and must compensate him in damages. * * *" (Words and figures in brackets ours.)
Appellant Lomm assigned several errors said to exist in the judgment appealed from. He first claims there are no documents in evidence showing that Mrs. Lomm ever actually became liquidator or had qualified as such. Our answer to that is very simple, Lomm throughout his testimony referred to his wife as "the liquidator," but in addition to this there is the incident of the $1000 per year salary she was "supposed" to and did receive for services as liquidator.
Appellant complains that the trial court "lacked" any reason for holding him responsible for the indebtedness of a corporation of which he was only an employee. Our conclusion as set forth above completely answers this assignment of error.
It is also claimed that plaintiff was not misled because it dealt not with the receiver but with the Commercial Iron and Metal Company as a corporation. When Pailet signed the contract on behalf of Commercial Iron and Metal Company the concern was in liquidation and in charge of a liquidator, but no reference of these facts is stated in the contract. The liquidator had no legal right to conduct business in the name of the corporation.
Counsel also states in brief:
 "This business did not go on for a day, but went on for many, many years, and it is only when this dispute arose, they are now attempting to do, what they could never have done prior to this time."
The fact that the business was carried on "for many, many years" is one of the reasons why we arrived at the conclusion that Nathan Lomm is personally responsible for plaintiff's claims.
The argument is also advanced that, whereas plaintiff sued and recovered a judgment against the corporation in the first suit, it is now estopped from seeking to hold Lomm individually, and particularly so in view of the fact that plaintiff has not shown that it has made any effort to execute its judgment against the corporation. There is no merit to this contention. Lomm disclaimed any interest in the corporation so, therefore, he has no right to complain that plaintiff filed suit against it, and such filing does not militate against plaintiff's right to bring suit against Lomm if he actually is the debtor and liable for plaintiff's claims. The first suit did not have the effect of purging Lomm of liability for his wrongdoing. The judgment plaintiff obtained against the corporation netted it nothing as it cannot be executed against corporate property, if there be any, so long as the corporation remains in liquidation. Property in the hands of a liquidator or receiver cannot be seized by a creditor. State ex rel. Remington Paper Co. v. Ellis, 45 La. Ann. 1418, 14 So. 308; House of Campbell, Inc. v. Campbell, La. App., 172 So.2d 727; Brown Son v. Wholesalers, Inc., In Liquidation, La. App.,52 So.2d 321.
No attack is made on that part of the judgment decreeing the dismissal of Lomm's reconventional demand.
For the above reasons, it is ordered, adjudged and decreed that the judgment insofar as Nathan Lomm is affected thereby is affirmed.
Affirmed. *Page 131